UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HONG KONG BROWN INT'L TRADE CO. LTD. et al.,<br><br>Petitioners,<br><br>v.<br><br>FS MEDICAL SUPPLIES LLC,<br><br>Respondent. | 26 MC 104 (DEH)<br><br>**OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

Before the Court is a motion to quash third-party subpoenas filed by Petitioners Hong Kong Brown International Trade Co. Ltd. and Wellcom Biotech Inc. (collectively, "Petitioners") on March 6, 2026. ECF No. 1. The subpoenas arise out of a matter currently before United States District Judge Charles Eskridge in the Southern District of Texas. *See FS Med. Supplies LLC v. Zhejiang Orient Gene Biotech Co., Ltd. et al.*, Case No. 25 Civ. 1332. Through the subpoenas, FS Medical Supplies ("Respondent-Plaintiff" or "FSMS") seeks Petitioners' financial records from two New York banks. Pet'rs' Mem. Law Supp. Mot. Quash at 1, ECF No. 3. Petitioners move to quash on the grounds that: (1) the subpoenas are untimely, *id.* at 8-10; (2) the requests seek records unrelated to the underlying litigation and are overly broad, *id.* at 11-14; and (3) the records are protected pursuant to Fed. R. Civ. P. 45(d)(3)(A)(iii), *id.* at 10. FSMS argues that the motion to quash should be denied because it is untimely, Resp't Mem. Law Opp'n Mot. Quashat 13-15, ECF No. 15, and because Petitioners' arguments are meritless, *id.* at 15-21. Also before the Court is FSMS's motion to seal. ECF No. 12. For the reasons stated herein, the motion to quash and the motion to seal are **GRANTED**.

**BACKGROUND**

**I.    Factual Background**

In 2025, FSMS filed suit against Zhejiang Orient Gene Biotech Co. Ltd. and Healgen Scientific, LLC (collectively, "Defendants") alleging breach of contract.  Schaeffer Decl., Ex. B, ECF No. 4-2.  According to FSMS, the contract prohibited Defendants from directly making deals with customers that FSMS introduced to Defendants, instead requiring Defendants to communicate with such customers through FSMS or to seek permission from FSMS first.  Resp't Mem. Law Opp'n Mot. Quash at 2-3.  FSMS intends to show that, in August 2020, it introduced Defendants to "Tanner," who, on behalf of the UK government, sought to purchase Covid-19 antigen tests manufactured by Defendants.  *Id.* at 3.  FSMS alleges that Defendants then worked out a deal with Tanner directly, effectively cutting FSMS out of the process.  *Id.* at 3-6.  According to FSMS, the deal with Tanner was quite profitable for Defendants, *id.* at 6, and was more profitable than a deal would have been if the contract negotiated between FSMS and Defendants had been adhered to, *id.* at 1.  ███████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████[1]  FSMS seeks approximately $1 billion in liquidated damages, *id.* at 10, as well as expectation damages, *id.* at 19.

While Petitioners are not parties to the underlying litigation, are not named in the Complaint, are not parties to the allegedly-breached contracts, and are not identified as third-party beneficiaries of those contracts, Pet'rs' Mem. Law Supp. Mot. Quash at 2, FSMS asserts that

---

[1] To the extent possible, the Court avoids disclosing information that is covered by the Protective Order in the underlying litigation.  ECF No. 12-1.  Some discussion, however, requires an analysis of that information, and those portions of the opinion are redacted.  An unredacted copy of this Opinion will be filed under seal on the docket.

Petitioners are owned or managed by leadership of the Defendant companies, Resp't Mem. Law Opp'n Mot. Quash at 1. FSMS contends that the information sought through the third-party subpoenas is relevant to establishing damages, *id.* at 19-20, will help rebut Defendants' "failure to mitigate" defense, *id.* at 20, and will be useful in challenging Defendants' witnesses' credibility and biases, *id.* at 21.

## II.      Procedural History

The parties mutually agreed that fact discovery would close on December 9, 2025. Pet'rs' Mem. Law Supp. Mot. Quash at 2. However, by agreement, depositions of several of Defendants' witnesses were scheduled between November 12, 2025 and January 8, 2026; at least two of those depositions occurred after the December 9 date. Resp't Mem. Law Opp'n Mot. Quash at 10. Because of these later-occurring depositions, Defendants sought, with consent of FSMS, to extend the timeframe for overall discovery by one week. *Id.* Other fact discovery matters were similarly delayed. *Id.*

During a deposition of a Defendants' witness on December 9, 2025, FSMS learned new information that gave rise to these subpoenas. *Id.* at 11-12. On that same day, FSMS issued the subpoenas, *id.* at 12, which were returnable by December 19, 2025. *Id.* The subpoenas seek the following information:

1. Account opening statements, Pet'rs' Mem. Law Supp. Mot. Quash at 3;
2. Copies of all checks, front and back, from October 1, 2020 to October 31, 2022;
3. Information showing the payor, payor account number, and payor bank for all incoming and outgoing wire or ACH transfers during that same period;
4. Any account ownership change forms from October 1, 2020 to present;
5. All monthly account statements from October 1, 2020 to present.

*Id.*

On December 30, 2025, Defendants filed a motion to quash the subpoenas. Resp't Mem. Law Opp'n Mot. Quash at 12. A hearing before Judge Eskridge was held on February 27, 2026.

3

*Id.* at 13. The motion to quash was denied without prejudice because the banks are located in the Southern District of New York and the Southern District of Texas was not the appropriate venue to bring the motion; it was further ordered that no motion to compel would be considered until March 6, 2026, giving the parties proper time to move to quash in the correct court. Pet'rs' Mem. Law Supp. Mot. Quash at 4.

## DISCUSSION[2]

### I.    Timeliness

#### A.    Timeliness of Subpoenas

Petitioners argue that the subpoenas must be quashed because they were brought on the last day of fact discovery and seek production of material after that date. *Id.* at 8-9. FSMS argues that it exercised due diligence in conducting fact discovery and only learned of the information necessary to give rise to the subpoenas on the day that they were served. Resp't Mem. Law Opp'n Mot. Quash at 15-16. FSMS also argues that the parties did not consider the date that the subpoenas were served to be "an absolute deadline" for fact discovery, as demonstrated by the parties' agreed-upon deposition schedule. *Id.* at 16.

"Service of a subpoena after the close of discovery is generally improper" because subpoenas should not be used "as a means to engage in discovery after the discovery deadline has passed." *Agapito v. AHDS Bagel, LLC*, No. 16 Civ. 8170, 2018 WL 3216119, at *1 (S.D.N.Y. May 17, 2018). However, courts in this District have excused untimely service of subpoenas when there is good cause for the delay.[3] "In evaluating whether a party has shown good cause for its bid

---

[2] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

[3] Oppositions to motions to quash untimely served subpoenas are treated as motions to reopen discovery. *See, e.g.*, *Agapito*, 2018 WL 3216119, at *2.

to enforce a late-served subpoena, the primary consideration is whether the moving party can demonstrate diligence." *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16 Civ. 1318, 2018 WL 6712769, at *6 (S.D.N.Y. Nov. 30, 2018). The court "may also weigh the probative value of the information sought against the burden of production . . . . " *Id.* "[O]ther factors that courts in this Circuit have considered . . . include (1) the imminence of trial; (2) whether the request is opposed; (3) prejudice to the non-moving party; (4) whether the moving party foresaw the need for additional discovery, in light of the discovery deadline set by the court; and (5) whether further discovery is likely to lead to relevant evidence." *Lopez v. Ramos*, No. 11 Civ. 7790, 2013 WL 6912692, at *3 (S.D.N.Y. Dec. 30, 2013).

FSMS has demonstrated good cause for its delay. The deposition schedule was mutually agreed upon, and FSMS served the subpoenas immediately after learning about Petitioners' relationship to the matter, demonstrating due diligence. It was impossible for FSMS to know that the subpoenas would be needed prior to learning of the relationship between Petitioners and Defendants. Moreover, trial is still months away. Resp't Mem. Law Opp'n Mot. Quash at 16. Finally, while fact discovery may have formally expired on December 9, 2025, the parties had mutually agreed that some fact discovery would occur after that deadline. For these reasons, the Court finds the subpoenas are not invalid due to untimely service.

### B.    Timeliness of Motion to Quash

FSMS argues that the motion to quash is untimely because it was made on March 6, 2026 but the subpoenas were returnable by December 19, 2025. *Id.* at 13-15. FSMS contends that Petitioners were on notice with respect to the subpoenas because of their relationship to Defendants, thus making such a lengthy delay unreasonable. *Id.* at 14. Petitioners argue that the Court should exercise its broad discretion because good cause exists for any delay because: (1) the subpoenas were issued on the banks, not on Petitioners; (2) Petitioners are not parties to the

litigation; and (3) there is no prejudice to FSMS caused by the delay.  Pet'rs' Mem. Law Supp. Mot. Quash at 8.  Petitioners further contend that their privacy interests weigh in favor of considering the motion to quash on the merits.  *Id.*

"It is well settled that, to be timely, a motion to quash a subpoena must be made prior to the return date of the subpoena."  *Est. of Ungar v. Palestinian Auth.*, 451 F. Supp. 2d 607, 610 (S.D.N.Y. 2006).  Still, "district courts have broad discretion over the decision to quash a subpoena, and a number of courts in this Circuit have exercised their discretion to consider motions to quash that were not timely filed within the meaning of Rule 45 and applicable case law."  *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 320 (S.D.N.Y. 2018) (citations omitted), *aff'd*, 349 F. Supp. 3d 346 (S.D.N.Y. 2018).  "[W]hen the court finds a combination of circumstances such as an overbroad subpoena that exceeds the bounds of fair discovery, a non-party acting in good faith, and communication between the parties, overlooking the issue of timeliness is appropriate."  *Grigsby & Assocs., Inc. v. Rice Derivative Holdings, L.P.*, No. 00 Civ. 5056, 2001 WL 1135620, at *4 (S.D.N.Y. Sep. 26, 2001) (considering untimely motion to quash because circumstances, including clearly overbroad nature of subpoena, warranted overlooking timeliness issue) (citing *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44 (S.D.N.Y. 1996)).

The motion to quash is unquestionably untimely.  The Court, however, finds it appropriate to overlook its untimeliness.  As discussed in more detail below, the Court finds that the overbroad nature of the subpoena, along with the protected nature of the information sought, justifies consideration of the motion's merits.  *See, e.g.*, *Olszewski v. Bloomberg L.P.*, No. 96 Civ. 3393, 2000 WL 1843236, at *4 (S.D.N.Y. Dec. 13, 2000) (considering untimely motion to quash because movant was "entitled to protection from discovery of his confidential health and disciplinary records").

## II.    Protected Nature of Information Sought

Petitioners assert that the information the subpoenas seek—broad swaths of Petitioners' financial records—is "protected matter" under Rule 45, which provides that a court "must quash or modify" a subpoena that "requires disclosure of privileged or *other protected matter*, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(iii) (emphasis added); *see also* Pet'rs' Mem. Law Supp. Mot. Quash at 10. FSMS argues that this argument is "frivolous" because "[b]ank records are not privileged." Resp't Mem. Law Opp'n Mot. Quash at 17.

The Court is unpersuaded by FSMS's argument. "[C]ourts in this district have repeatedly found that parties whose banking records are subpoenaed have a privacy interest in their personal financial affairs." *Silverstone Holding Grp., LLC v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co.*, 650 F. Supp. 3d 199, 203-04 (S.D.N.Y. 2023). FSMS directs the Court to out-of-district cases, or cases where motions to quash subpoenaed bank records were denied because the requests were irrelevant to the underlying litigation, not because the movant had no privacy interest in their financial records. *See, e.g.*, *Conopco, Inc. v. Wein*, No. 05 Civ. 9899, 2007 WL 2119507, at *2 (S.D.N.Y. July 23, 2007) ("There is no dispute that Wein has a privacy interest in her personal financial affairs . . . . Thus, to the extent that the financial information Plaintiff seeks is relevant, it must be produced.").

Thus, the Court finds Petitioners have a privacy interest in their banking records. Accordingly, determining whether the subpoenas should be quashed requires the Court to balance the relevance or probative value of the information FSMS seeks against that interest. *See Silverstone*, 650 F. Supp. 3d at 203. The Court turns to that inquiry next.

## III.    Relevance and Probative Value of Subpoenas

Petitioners claim that the documents and information sought by the subpoenas are irrelevant to FSMS's breach of contract claim because "Petitioners are not named in the Texas

7

Litigation, not mentioned in the Complaint, not parties to or identified as third-party beneficiaries of the contracts underlying FSMS's sole claim, and not alleged to have participated in any of the transactions at issue in the case." Pet'rs' Mem. Law Supp. Mot. Quash at 11. FSMS responds that the information sought through the third-party subpoenas: (1) is relevant to establishing damages, Resp't Mem. Law Opp'n Mot. Quash at 19-20; (2) will help rebut Defendants' "failure to mitigate" defense, *id.* at 20; and (3) will be useful in challenging Defendants' witnesses' credibility and biases, *id.* at 21. As explained below, the Court is not persuaded that the probative value of the records sought as to any of these issues outweighs the privacy interests asserted by Petitioners.

With respect to damages, FSMS alleges that the information gleaned from the subpoenas will be helpful in establishing expectation damages because the information "will support FSMS's position that the prices Tanner paid were inflated," and that FSMS "would have negotiated better prices than Tanner did and therefore would have earned higher profits." Resp't Mem. Law Opp'n Mot. Quash at 19-20. That is, FSMS contends that it will be able to show that profits generated through the deal were so high ████████████████████████████████████████████ ██████. *Id.* at 20. But the Court finds it difficult to understand how ████████████████ non-parties—even if those non-parties have some relationship to Defendants—are relevant to a contract between FSMS and Defendants. At issue is the negotiated price between Tanner and Defendants as compared to what FSMS would have negotiated with Defendants if the contract had not been breached. ████████████████████████████████████████████ ███████████ is, at best, only tangentially relevant to damages—and is not of sufficient probative value as to outweigh the privacy interests asserted by Petitioners.

Next, FSMS contends that this evidence is needed to rebut Defendants' failure to mitigate defense because it must show that even if FSMS had told Defendants to stop selling tests to Tanner, Defendants would not have stopped. *Id.* Under FSMS's theory, this evidence will help ████████

8

████████████████████████████████████████████

bolster FSMS's argument that Defendants would have been less likely to have stopped selling tests to Tanner at the inflated prices. Relevant or not, however, whether the information sought has sufficient probative value for purposes of the motion to quash is a separate inquiry. *See Silverstone*, 650 F. Supp. 3d at 203 ("[T]he . . . inquiry requires weighing the relevance *or probative value* of the documents being sought against the privacy interests . . . asserted.") (emphasis added). In making its argument, FSMS provides a litany of evidence showing ████ ███████████████████████, which—in and of itself—suggests that FSMS already has what it needs to make a persuasive case that ███████████████████████████████████ maintain Defendants' relationship with Tanner. ██████████████████████████████ ██████████████████ would have likely motivated Defendants to maintain their relationship with Tanner; ██████████████████████████████ is not required to demonstrate that motivation. Thus, the probative value of the relevant information is low.

Finally, FSMS argues this discovery is needed to challenge Defendants' witnesses' credibility and biases. Resp't Mem. Law Opp'n Mot. Quash at 21. Impeachment evidence may, in some cases, be relevant. *See, e.g., U.S. Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, 338 F.R.D. 309, 317 (S.D.N.Y. 2021) ("[T]he Court accepts that impeachment evidence relating to a witness is 'relevant' in the broadest sense of the word."); *Guzik v. Albright*, No. 16 Civ. 2257, 2019 WL 13411485, at *1 (S.D.N.Y. July 15, 2019) (holding subpoenaed evidence "may aid the Court in assessing the credibility of the parties' competing accounts"). However, the court must also consider whether discovery related to gathering impeachment evidence "is proportional to the needs of the case." *Collector's Coffee Inc.*, 338 F.R.D. at 317. As noted above, the evidence FSMS has already gathered significantly decreases the need for the desired discovery.

The Court thus concludes that Petitioners' privacy interests outweigh the relevance and probative value of the discovery sought. Further, the subpoenas are disproportionate to the needs of the case.

## IV.    Motion to Seal

The parties have each filed numerous documents in connection with this matter under seal. The documents in question are submitted in connection with a discovery dispute, rendering them judicial documents, to which a presumption of public access attaches (although somewhat lower than that for documents submitted in connection with a dispositive motion). *See IBM Corp. v. Micro Focus (US), Inc.*, No. 22 Civ. 9910, 2024 WL 970907, at *1 (S.D.N.Y. Feb. 29, 2024). The mere existence of a confidentiality order, without more, does not defeat the presumption of public access to judicial documents. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 125-26 (2d Cir. 2006). Rather, "continued sealing of [such] documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Brown v. Maxwell*, 929 F.3d 41, 47 (2d Cir. 2019).

Such "higher values" that may justify sealing or redactions may include various interests asserted here, including the privacy interests of third parties. *See In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987). The Court has reviewed the proposed redactions and find them narrowly tailored to protect sensitive financial information, *see* Defs.' Mem. in Supp. of Leave to File Redacted Docs., ECF No. 19,  and, consistent with the decisions of the district court in the underlying breach of contract action, *see id.* (citing decisions), concludes that the presumption of public access has been overcome. *See GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*, 769 F. Supp. 2d 630, 649 (S.D.N.Y. 2011).

## CONCLUSION

For the reasons stated herein, the motion to quash is **GRANTED**.  In addition, the motion to seal is **GRANTED**.  The motion to admit Eliseo R. Puig *pro hac vice* is **DENIED** as moot.  The Clerk of Court is respectfully requested to close this matter.

SO ORDERED.

Dated: April 7, 2026

New York, New York

_____

DALE E. HO
United States District Judge